# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| DONALD L. UBELE, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Case No. CV408-178 |
| | ) | [underlying CR405-012] |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Donald Ubele has moved to vacate, set aside, or correct his federal prison sentence under 28 U.S.C. § 2255. (Doc. 1.)[1] The government has responded in opposition to the motion. (Doc. 6.) For the following reasons, Ubele's motion should be **DENIED**.

## I. BACKGROUND

On February 8, 2005, a federal jury found Ubele guilty of possession of a firearm by a convicted felon and possession of an unregistered machinegun. (Cr. Doc. 70.) He was sentenced to a term of 262 months'

---

[1] Unless otherwise noted, citations are to the docket in movant's civil case, CV408-178. "Cr. Doc." refers to documents filed under movant's criminal case, CR405-012.

imprisonment as to count 1 and 120 months as to count 2; both sentences were set to run concurrently. (Cr. Doc. 75.) Ubele appealed, and on March 6, 2007, the Eleventh Circuit affirmed his conviction and sentence. <u>United States v. Ubele</u>, 215 F. App'x 971 (11th Cir. 2007) (per curiam). On June 4, 2007, the United States Supreme Court denied certiorari. <u>Ubele v. United States</u>, 127 S.Ct. 2924 (2007).

Ubele is currently incarcerated at F.C.I. Williamsburg, in Salters, South Carolina. (Doc. 1 at 1.) His 28 U.S.C. § 2255 motion was filed on August 29, 2008,[2] asserting that his trial counsel was ineffective for:

(1) failing to object to an allegedly illegal search and seizure; and

(2) allowing "the government to enhance Petitioner as an armed career offender."

---

[2] Ubele filed a "motion to preserve and stay 28 U.S.C. § 2255" on May 28, 2008, which contained no grounds for relief. (Cr. Doc. 88.) The government responded, arguing that the motion was untimely. (Cr. Doc. 89.) Ubele filed a "motion to clarify and expand upon his motion for an extension of time under equitable tolling," on July 23, 2008, arguing that he was entitled to equitable tolling based upon counsel's failure to provide him with legal materials and transcripts and because of his transfer to another prison. (Cr. Doc. 90.) The government responded, asking the Court to construe the motion as a § 2255 motion and refer it to the magistrate. (Cr. Doc. 91.) Ubele filed a "motion to expand and clarify" on August 29, 2008, which finally raised his present grounds for relief. (Cr. Doc. 92.) The Court entered an order construing Ubele's three filings as a single § 2255 motion on August 29, 2008 and directing the undersigned to hold a hearing on the issue of equitable tolling, to determine whether Ubele's motion was timely. (Cr. Doc. 94.) On October 3, 2008, the government responded to Ubele's § 2255 motion and expressly waived its defense to Ubele's equitable tolling claim. (Doc. 4 at 16.) Accordingly, the Court will address Ubele's claims on the merits.

2

(Doc. 8 at 4.) The government responded in opposition to Ubele's motion on October 3, 2008. (Doc. 4.)

## II. ANALYSIS

Ubele raises two claims of ineffective assistance of counsel. (Doc. 1 at 4.) In <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984), the Supreme Court created a two-part test for determining whether a movant received ineffective assistance of counsel. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Id.</u> Second, he must demonstrate that the defective performance prejudiced the defense to such a degree that the results of the trial cannot be trusted. <u>Id.</u>

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. <u>Id.</u> at 690. The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of

3

professional assistance; that is, the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689.

Under the prejudice prong, the movant must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Strickland, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lightbourne v. Dugger, 829 F.2d 1012, 1022 (11th Cir. 1987); Boykins v. Wainwright, 737 F.2d 1539, 1542 (11th Cir. 1983).

With these considerations in mind, the Court will now turn to Ubele's asserted grounds for relief.

### A. Search and Seizure of Gun Safes

Ubele contends that his counsel was ineffective for failing to move to suppress the firearms underlying his conviction. (Doc. 8 at 5.) If a claim of ineffective assistance of counsel is predicated on defense counsel's failure to litigate a Fourth Amendment claim, the movant must establish that the suppression claim is meritorious and that a reasonable probability exists

4

that the verdict would have been different absent the evidence subject to suppression. Kimmelman, 477 U.S. at 375. Here, the facts do not support a meritorious suppression claim.

The government established at trial that Ubele was an avid firearms collector. But as a convicted a felon, he knew that he could not keep the firearms in his possession. Instead, he used his friends and family to help him keep some distance between him and his collection. About two or three years prior to the trial, Ubele and Chadwick Graham, Ubele's cousin and fellow gun collector, realized that they had collected enough firearms to warrant the purchase of a gun safe. (Cr. Doc. 84 at 10.) Ubele purchased a safe, and he and Graham placed it in a storage shed located on Graham's land. (Id. at 11.) About a year-and-a-half later, the safe was overflowing with weapons, so the cousins bought another safe, which they also placed in the storage shed. (Id.) Graham and Ubele eventually had a dispute, which prompted Ubele to move the guns to a different location. (Id. at 14.) Ubele asked his girlfriend, Tammy Mosley, if he could bring the safes to her mother's house. (Id. at 20.) Mosley's mother, Debra Sanderson, agreed, and the safes were placed in a spare room in her home. (Id. at 27.) On one

occasion, Ubele came to Sanderson's house with a firearm he placed in one of the safes. (Id. at 27-28.) Ubele and Mosley eventually split up, prompting Mrs. Sanderson to call the local police to have Ubele's safes removed from her property. (Id. at 29.) The police contacted Agent Valoze of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), who went to Mrs Sanderson's home to investigate.[3] (Id. at 37.) Valoze had Mrs. Sanderson sign a "consent to search" form before she took him to the room with the safes. (Id. at 38.) After examining the safes, Valoze had them removed from Mrs. Sanderson's home and taken to the Savannah ATF office for further inspection. (Id.) He applied for a search warrant to open the safes. (Id.) Once the warrant was issued, Valoze had a locksmith open both safes, which contained approximately 34 firearms and a large quantity of ammunition. (Id. at 39.)

The seizure of the gun safes was undeniably performed without a warrant. Ubele contends that the seizure violated his Fourth Amendment rights and that his attorney should have moved to suppress the

---

[3] Agent Valoze had learned several months earlier from a confidential informant that Ubele was storing the firearms on Chad Graham's property. (Cr. Doc. 84 at 47-48.) He was aware that Ubele was a convicted felon before Mrs. Sanderson called him about the safes.

6

introduction of the firearms at trial. (Doc. 1 at 2.) Ubele, however, lacks standing to object to the seizure.

It is well settled that a defendant always bears the burden of establishing his standing to assert a violation of the Fourth Amendment. Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("The individual challenging a search bears the burden of proof and persuasion" on the issue of his standing); United States v. Brazel, 102 F.3d 1120, 1147 (11th Cir. 1997) (defendant failed to meet burden of showing an expectation of privacy in apartment given the record's "uncertainty" as to whether he was a tenant at the time of the search); United States v. Hall, 716 F.2d 826, 829 (11th Cir. 1983) ("The defendant bears the burden of showing that he possesses a privacy interest" in the area searched). Accord United States v. Silva, 247 F.3d 1051, 1055, 1057 (9th Cir. 2001); United States v. Melucci, 888 F.2d 200, 202 (1st Cir. 1989); see 4 Wayne R. LaFave, Search and Seizure § 11.2(b), at 46-47 (4th ed. 2004). To meet this burden, defendant must show that he had a legitimate expectation of privacy in the area searched. Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); Rakas, 439 U.S. at 143.

"Determining whether an individual has a legitimate expectation of privacy in the object of a search requires a two-part inquiry": (1) whether the individual manifested a subjective expectation of privacy in the property searched and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. United States v. McBean, 861 F.2d 1570, 1573 & n.7 (11th Cir. 1988). Here, it is clear that Ubele had no legitimate expectation of privacy in the search of Mrs. Sanderson's home and the seizure of the gun safes. He did not own, reside at, or possess a key to the residence. (Cr. Doc. 84 at 32.) By his own admission, he could only access the safes if Mrs. Sanderson permitted him to enter the house. (Id. at 122.) He only visited the safes once in the several months they were located in the house, and he did so in her presence. (Id. at 27-28.) Although he states that "the safes were in a specific area segregated from Debra Sanderson's belongings," Mrs. Sanderson testified at trial that the safes were kept in her grandchildren's room where she kept their "junk, toys and stuff." (Id. at 27.)

As he was not given free rein to enter the house or exercise control over the room in which the safes were located, it is clear that Ubele never

manifested any subjective expectation of privacy as to the room searched.[4] Accordingly, he lacks standing to contest the search of the room and the seizure of the safes. Rakas, 439 U.S. 128, 133-38 (holding that a defendant without standing could not object to the introduction of evidence obtained from a third person's property); see also Rawlings, 448 U.S. at 105 (ownership of property seized does not automatically confer standing to challenge search); United States v. Salvucci, 448 U.S. 83, 92-93 (1980) (striking down automatic standing rule previously applicable in criminal possession offenses). Accordingly, the seizure was valid pursuant to Sanderson's freely given consent. United States v. Novello, 519 F.2d 1078, 1080 (5th Cir. 1975) (permitting police to view defendant's property in warehouse where defendant had no key to warehouse, and warehouse foreman had unfettered access to room where items were stored).

Furthermore, even assuming Ubele has standing to contest to the seizure, the removal of the safes from Mrs. Sanderson's home was a reasonable seizure under the Fourth Amendment. As the owner of the

---

[4] Although Ubele manifested an expectation of privacy as to the contents of the safes, he never did so with regards to the room that was searched. As noted above, Valoze obtained a search warrant justifying the actual entry of the safes after their seizure.

home, Mrs. Sanderson certainly had the right to allow the agents to enter the room where the safes were located, especially since Ubele was not present and did not have exclusive access or exercise control over that room. United States v. Matlock, 415 U.S. 164, 170 (1974). The agents gained no more information by removing the safes from the room than they did by initially viewing the safes where they stood. The seizure merely preserved the evidence inside the safes until a search warrant could be obtained. None of Ubele's privacy interests were infringed by the agents' conduct. Under these circumstances, the warrantless seizure of the safes pending the issuance of a search warrant did not offend the Fourth Amendment's reasonableness standard.

As Ubele lacked standing to object to the seizure of the safes from Mrs. Sanderson's home, and as the seizure was reasonable even if Ubele had standing, Ubele's counsel had no grounds to raise a Fourth Amendment suppression claim on that issue. Consequently, counsel did not perform deficiently under Strickland's performance prong.

### B. Armed Career Criminal Enhancement

Ubele contends that counsel was ineffective for failing to effectively

argue that he did not qualify as an armed career criminal. (Doc. 1 at 10.) Specifically, he contends that the government mistakenly treated one of his past convictions as two separate convictions and that the mistake caused him to be sentenced to 262 months' imprisonment rather than 120. (Id.) The record reveals, however, that counsel objected to the armed career criminal classification at sentencing. (Cr. Doc. 86 at 5.) As counsel raised this ground, he cannot be said to have been ineffective for failing to do so.[5]

## III. CONCLUSION

For the foregoing reasons, Ubele's § 2255 motion should be **DENIED**.

**SO REPORTED AND RECOMMENDED** this 5th day of January, 2008.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5] In addition, Ubele contended on appeal that the armed career criminal classification should not have applied in his case. Ubele, 215 F. App'x at 973. Ubele cannot repackage the ground as a claim of ineffective assistance of counsel and relitigate it in this Court. Davis v. United States, 417 U.S. 333, 342 (1974); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Marshek v. United States, 2006 WL 2036996, at *7 (S.D. Ga. July 18, 2006). As Ubele does not allege any "extraordinary circumstances" justifying reconsideration of issues previously considered and rejected by the Eleventh Circuit, this claim fails.